## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Civil No. 11-mc-0012 (JNE/SER) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Swanson Flo-Systems, Co.; Thomas L. Howe as President of Swanson Flo-Systems, Co.; and Donald K. Eschenbacher as Chief Financial Officer of Swanson Flo-Systems, Co., | |
| Respondents. | |

Bahram Samie, Esq., 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, on behalf of Petitioner.

Peter L. Milinkovich, Esq., 333 Washington Avenue North, Suite 306, Minneapolis, Minnesota, 55401, on behalf of Respondents.

STEVEN E. RAU, United States Magistrate Judge

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) upon the Petition of the Internal Revenue Service ("IRS") to enforce an IRS Summons pursuant to 26 U.S.C. § 7402(b) and § 7604(a). For the reasons set forth below, the Court recommends that the Petition to Enforce Internal Revenue Service Summons [Doc. No. 1] be granted, the IRS's requests be granted, and that the summons at issue be enforced.

I.      FACTUAL AND PROCEDURAL HISTORY

Swanson Flo-Systems, Co. ("SFS") is the subject of an investigation into its federal tax liabilities for the periods ending December 31, 2007 and December 31, 2008. IRS Officer John A. Dignan[1] ("Dignan") is conducting the investigation. Dignan confirmed the commencement of his examination in a letter to SFS dated March 17, 2010. On May 5, 2010, Dignan interviewed Respondents Donald K. Eschenbacher ("Eschenbacher") and Thomas L. Howe ("Howe") at SFS's corporate headquarters. To date, Dignan has issued 72 Information Document Requests ("IDRs"), ten of which related to issues involving the compensation of Eschenbacher, Howe, and a third employee, Scott Simmdorn ("Simmdorn"). SFS has produced responses to all of the IDRs, though the adequacy of these responses is disputed.[2]

On September 28, 2010, Dignan personally served attested copies of three separate IRS Summons pursuant to 26 U.S.C. § 7603. Dignan served the first and second summonses on Howe, as President of SFS, "to produce for examination books, papers, records, or other data on October 14, 2010" and "to appear and give testimony on October 21, 2010." [Doc. Nos. 1-2, 1-3] (Dignan Decl. ¶4, ¶ 5). Dignan served the third summons on Eschenbacher, as Chief Financial Officer of SFS "to appear and give testimony on October 21, 2010. [Doc. No. 1-4]; (Dignan Decl. ¶ 8). On October 21, neither Howe nor Eschenbacher appeared before Dignan in response to the IRS summonses (Pet. at 4, ¶ 11). As a result, on October 29, 2010, the IRS sent a last chance letter to Howe and Eschenbacher's attorney, Peter Milinkovich ("Milinkovich"). *Id*. at 4, ¶ 12. On November 2, 2010, Milinkovich informed the IRS that Howe and Eschenbacher would not appear before Agent Dignan in response to the last chance letter.

---

[1] Dignan is assigned to the Large Business and International Division of the IRS's Division Office located in Brooklyn Center, Minnesota. (Dignan Decl. at ¶ 1).
[2] SFS "emphatically" asserts that "Respondent has answered all IDRs presented." [Doc. No. 9] (Resp't Br. at 3). The IRS, however, emphasizes the inadequacy of SFS's responses to Dignan's requests for information. [Doc. No. 1-1, at 15]; (Dignan Decl. ¶15).

On January 27, 2011, the IRS filed its Petition to Enforce the IRS Summons. In support of its Petition, the IRS offered the Declaration of Dignan as well as the Administrative Summons. As pertinent here, Dignan avers that: 1) SFS's responses were inadequate and incomplete; 2) the IRS followed all required administrative steps; 3) the matter has not been referred to the Department of Justice; and 4) the information sought is necessary to the IRS's investigation.[3]

The Court issued three Orders to Show Cause on February 9, 2011 [Doc. Nos. 2-4] and a fourth Order to Show Cause on February 15, 2011 [Doc. No. 5]. SFS filed a Memorandum in response to the IRS Petition on February 25, 2011 [Doc. No. 25]. SFS's brief alleges that Howe and Eschenbacher have already appeared personally and provided the specific documents requested, and that the IRS is already in possession of the information it requests. (Resp't Br. at 1). The Court conducted a hearing on the matter on March 14, 2011 [Doc. No. 14].

---

[3] Agent John A. Dignan's January 20, 2011 Declaration states in relevant part:

15. During the course of the investigation described in paragraph (2), I issued numerous information document requests to Swanson Flo-Systems, Co. In response, Swanson Flo-Systems, Co. did not provide all the records requested or provided incomplete records. Accordingly, the testimony, books, papers, records, or other data sought by these summonses are not already in the possession of the Internal Revenue Service.

16. All administrative steps required by the Internal Revenue Code for issuance of these summonses have been taken.

17. As of the date that these summonses were issued and served, and as of the date I signed this declaration, no referral has been made to the Department of Justice by the IRS regarding the investigation of the corporate income tax liabilities of Swanson Flo-Systems, Co. for the tax periods ending December 31, 2007 and December 31, 2008.

18. It is necessary to obtain the testimony and examine the books, papers, records, or other data sought by the summonses in order to determine the corporate income tax liabilities of Swanson Flo-Systems, Co. for the tax periods ending December 31, 2007 and December 31, 2008.

(Dignan Decl. at 4-5).

## II. DISCUSSION

### a. Standard of Review

The administrative summonses of the IRS are not self-enforcing. *In Re Testimony of Arthur Anderson & Co.*, 832 F.2d 1057, 1059 n.2 (8th Cir. 1987). However, "[i]f the taxpayer refuses to comply with [an IRS] summons, the United States may seek judicial enforcement. . . in the appropriate federal district court which 'shall have jurisdiction. . . to compel such attendance, testimony, or production of books, papers, or other data.'" *United States v. Carter*, 988 F.2d 68, 69 (8th Cir. 1993) (quoting *United States v. First Nat'l Bank Through O'Hara*, 727 F.2d 762, 763 (8th Cir. 1984); *see* 26 U.S.C. § 7402(b) and § 7604(a).

In reviewing a petition for the enforcement of an administrative summons, the IRS's burden is not to demonstrate that probable cause for a violation of the Internal Revenue Code exists, but rather to make a *prima facie* showing that the summons was issued in good faith. As the United States Supreme Court stated in *United States v. Powell*, 379 U.S. 48, 57-58 (1964):

> The Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired. He must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed.

The IRS may satisfy its burden by merely presenting a sworn affidavit of the issuing officer or agent attesting to these facts. *United States v. Sindel*, 854 F. Supp. 595, 599 (E.D. Mo. 1994) (citing *United States v. Leventhal*, 961 F.2d 936, 939-40 (11th Cir. 1992)); *see United States v. Norwood*, 420 F.3d 888, 892 (8th Cir. 2005) (citing *United States v. Moon*, 616 F.2d 1043, 1046 (8th Cir. 1980)). Once the IRS makes a *prima facie* showing, the burden shifts to the respondent. *See United States v. Meininger*, 101 F.R.D. 700, 703 (D. Neb. 1984) (citing *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 361 (1977)). The respondent must either disprove one or

more of the four *Powell* elements or demonstrate that the enforcement of the summons would constitute an abuse of the Court's process. *Meininger*, 101 F.R.D. at 703.

An abuse of process occurs when a summons is issued "for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. The taxpayer carries a "heavy" burden to prove that the IRS has abused the court's process. *See La Salle Nat'l Bank*, 437 U.S. at 316; *United States v. Stuart*, 489 U.S. 353, 360 (1989). A party opposing a summons must "disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *La Salle Nat'l Bank*, 437 U.S. at 316. A challenge to the lawful purpose served by a summons does not create "a forum in which to contest the validity of the underlying assessments." *United States v. Mueller*, 930 F.2d 10, 12 (8th Cir. 1991) (citing *United States v. Harper*, 662 F.2d 335, 336 (5th Cir. 1981)). Before the Court will deny enforcement of a summons, "[t]he taxpayer must make a substantial preliminary showing of abuse of the court's process." *Tax Liabilities of: John Does v. United States*, 866 F.2d 1015, 1019 (8th Cir. 1989).

   **b. Legal Analysis**

In this case, the IRS has met the requirements for the summonses to be enforced. 26 U.S.C. § 7604; *Powell*, 379 U.S. at 57-58 (providing four prongs required for administrative summons enforcement). SFS has not offered any competent evidence to rebut the IRS's *prima facie* showing. *See La Salle Nat'l Bank*, 437 U.S. at 316; *Norwood*, 420 F.3d at 893 (requiring "substantial countervailing policies or express statutory prohibition" to prevent the "effective performance of congressionally imposed responsibilities to enforce the tax code") (citations and quotations omitted)). SFS's arguments against enforcement of the summonses rest largely on

two grounds: 1) SFS asserts that the IRS's requests are overly broad and 2) SFS asserts that the documents sought are already in the IRS's possession. The Court will analyze these arguments separately in conjunction with each *Powell* element.

First, the IRS has demonstrated, through the Declaration of Dignan and the content of the Summons, that the documents and testimony being sought are for the legitimate purpose of assessing SFS's federal income tax liability. (Dignan Decl. ¶ 3); *see Powell*, 379 U.S. at 57-58. SFS does not allege that the IRS summonses are the products of an illegitimate purpose.[4]

With respect to the second *Powell* element, relevance, SFS argues that the IRS summonses are "overbroad" because they request "broad categories" of documents. (Resp't Br. at 3-4); *see Powell*, 379 U.S. at 57-58. The Eighth Circuit held that "broadness alone is not sufficient" to prevent enforcement of an IRS summons or subpoena "so long as the material sought is relevant." *Adams v. FCC,* 296 F.2d 861, 867 (8th Cir. 1961). The Eighth Circuit applies a relevance test in determining whether an IRS summons is overbroad. *See Adams,* 296 F.2d at 867; *see also U.S. v. Wyatt*, 637 F.2d 293, 302 n.16 (5th Cir. 1981) (analyzing various circuits' approaches to determining overbreadth). Relevance in the context of a tax liability investigation includes any documents that "relate to the [respondent's] tax liability." *United States v. Giordano*, 419 F.2d 564, 569 (8th Cir. 1970). The IRS has "a statutory right" to request information relevant to assessing an entity's tax liability. *Id*. at 569. A request made with "reasonable particularity" is not overbroad. *United States v. Norwood*, 420 F.3d 860, 865 (D.N.D. Aug. 14, 2004).

Here, SFS makes an overbreadth objection on the grounds that the IRS "has not actually requested any specific document." (Resp't Br. at 3-4). Such an argument is illogical because,

---

[4] SFS alleged that the IRS's actions toward employee Simmdorn constituted "harassment." (Resp't Br. at 5). Simmdorn, however, is not named in the four summonses that are the subject of the IRS's Petition before the Court.

naturally, the IRS does not know which documents relate to the compensation and earnings information it seeks. The obvious, legitimate purpose of the IRS's requests is to obtain such information from SFS to determine the accuracy of its tax liability for the 2007 and 2008 tax years. (Dignan Decl. ¶ 3). SFS thus cannot viably challenge the relevancy of this information, which is necessary for the IRS to conduct its investigation. *See Norwood*, 420 F.3d at 865. SFS's argument appears to rest on overbreadth alone – an insufficient basis. *See Stuart*, 489 U.S. at 360; *La Salle Nat'l Bank*, 437 U.S. at 316; *Adams,* 296 F.2d at 867.

SFS asserts that the third *Powell* element is not satisfied because the information the IRS seeks is already in the IRS's possession. (Resp't Br. at 3-5). A plethora of courts have held that an investigating agent's declaration that the materials are not within the IRS's possession is sufficient to satisfy the third *Powell* element. *See*, *e.g.*, *Giordano*, 419 F.2d at 566; *Norwood*, 420 F.3d at 865; *United States v. Garrett*, 571 F.2d 1323, 1328 (5th Cir. 1978). Furthermore, the IRS has adequately shown that SFS has failed to comply fully with Dignan's IDRs and request for interviews with SFS executive officers Howe and Eschenbacher. (Dignan Decl. ¶ 15).

SFS additionally relies on *United States v. Pritchard*, 438 F.2d 969 (5th Cir. 1971) to assert that summonsing Howe and Eschenbacher "to answer questions that have already been answered is an unnecessary examination and is prohibited." *Pritchard*, however, is distinguishable from the instant case, because in *Pritchard*, the IRS failed to assert whether the IRS was already in possession of the information sought in the summons. 438 F.2d at 971; *see Garrett*, 571 F.2d at 1328 (concluding that *Pritchard* did not bar enforcement of the IRS summons because "the government alleged and set about to prove that it did not possess the information sought"). Here, as in *United States v. Garrett*, 571 F.2d 1323 (5th Cir. 1978), the IRS provided an affidavit

7

sufficiently supporting its assertion that the sought information was not already in its possession. (Decl. Dignan ¶ 15). Such a showing is sufficient to meet the third *Powell* element.

The fourth *Powell* prong is satisfied because the IRS followed the administrative steps required by the IRS Code. (Dignan Decl. ¶ 16). SFS does not object to the summonses on procedural grounds. Additionally, as Dignan has attested, the matter has not been referred to the Department of Justice. (Dignan Decl. ¶ 17). These facts are sufficient to meet the IRS's burden to make out a *prima facie* case that enforcement is appropriate. *See United States v. Fond Du Lac Reserv. Bus. Comm.*, 906 F. Supp. 523, 527 (D. Minn. 1995). Accordingly, SFS has failed to satisfy its heavy burden of demonstrating that the *Powell* elements have not been met or that the enforcement of the Summons would be an abuse of process.

## III.   RECOMMENDATION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that the Petition to Enforce Internal Revenue Summons [Doc. No. 1] be **GRANTED**. The Court further recommends that:

1. Respondents shall obey every requirement of the three IRS summonses issued on September 28, 2010 within 30 days of the date this Report and Recommendation is adopted by Judge Joan N. Ericksen;
2. It is further recommended that the United States be awarded its costs associated with the instant petition.

Dated: April 13, 2011

                                               s/ Steven E. Rau_____
                                               STEVEN E. RAU
                                               United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 27, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.